CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

6/5/2026

LAURA A. AUSTIN, CLERK
BY:  s/ ARLENE LITTLE
DEPUTY CLERK

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

|  |  |
|---|---|
| DANVILLE, VA (1431 S BOSTON) LLC, | |
| *Plaintiff,* | CASE NO. 6:26-CV-00047 |
| v. | |
| STARBUCKS CORPORATION, | MEMORANDUM OPINION & ORDER |
| *Defendant.* | |
|  | JUDGE NORMAN K. MOON |

This dispute between Plaintiff, a commercial landlord, and its tenant, Starbucks Corporation ("Starbucks"), arises after Starbucks declined to take possession of a built-to-suit facility in Danville, Virginia. *See* Compl., Dkt. 1-2. Starbucks moves to dismiss Plaintiff's breach of contract claim to the extent that Plaintiff seeks beyond $414,702.02 in damages.[1] Dkts. 8, 9. Starbucks' asks the Court to find that the parties' Commercial Lease ("lease"), *see* Dkt. 1-2 at 19–117, unambiguously limits Starbucks' liability to two years of base rent, Dkt. 9. Because Starbucks' reading is discordant with the lease's text and structure, its motion to dismiss must be denied.[2]

## I.      BACKGROUND

Starbucks contracted with Plaintiff to build a customized Starbucks location at 1431 South Boston Road, Danville VA and then lease that location to Starbucks for an initial ten-year term. The lease anticipated Starbucks paying $1,985,684.10 in base rent. Dkt. 1-2 ¶ 2. Plaintiff purchased land, constructed the improvements required by the commercial lease, satisfied all conditions of

---

[1]      Alternatively, Starbucks moves to strike Plaintiff's *ad damnum* clause and limit it to $414,702.02 in damages.

[2]      The parties requested oral argument. However, this is a simple exercise of reviewing and giving meaning to the words of a contract. Any additional gloss offered by the parties at oral argument would not assist the decisional process and would impose unnecessary costs on both sides.

delivery, and timely tendered possession of the premises to Starbucks. *Id.* ¶ 3. Starbucks refused

to execute the Lease's delivery of possession form, unilaterally returned the keys, and declared it

did not intend to move forward with the Lease. *Id.* ¶ 4.

As relevant here, Paragraph 14.1 of the parties' commercial lease governs defaults:

14.1  TENANT'S DEFAULTS. The occurrence of any one or more of the following events shall constitute a default and breach of this Lease by Tenant:

(a)  The failure by Tenant to make any payment of Base Rent or any other payment required to be made by Tenant hereunder, as and when due, where such failure shall continue for a period of fifteen (15) days after Tenant's receipt of Landlord's notice in writing of such failure, but in no event shall Landlord be required to give more than two (2) notices in any twelve (12) month period for a failure to make a regularly scheduled payment of Base Rent or Annual Additional Rent; or

(b)  The failure by Tenant to observe or perform any of the covenants, conditions, or provisions of this Lease to be observed or performed by Tenant, other than the payment of sums due hereunder, where such failure shall continue for a period of thirty (30) days after Tenant's receipt of Landlord's written notice thereof; provided, however, that if the nature of Tenant's default is such that more than thirty (30) days are reasonably required for its cure, then Tenant shall not be deemed to be in default if Tenant commences such cure within such thirty (30) day period and thereafter diligently pursues such cure to completion.

Ex. 1 to Compl., Dkt. 1-2 at 44.

Paragraph 14.2 of the commercial lease addresses "remedies in default":

14.2  REMEDIES IN DEFAULT. In the event of any such default which remains uncured after the expiration of the applicable notice and cure period(s) specified above, Landlord may, in accordance with procedures required by law, pursue one of the following remedies:

(a)  In the event of a material default, Landlord may terminate Tenant's right to possession of the Premises by any lawful means in which case this Lease shall terminate and Tenant shall surrender possession of the Premises to Landlord within thirty (30) days after Tenant's receipt of Landlord's written notice of termination. Landlord shall not be entitled to terminate this Lease during any time that the parties are involved in a good faith dispute regarding the existence of an alleged material non-monetary default. In the event Landlord is permitted to terminate this Lease as set forth herein, Landlord shall be entitled to recover from Tenant all damages incurred by Landlord by reason of Tenant's default including, but not limited to, the cost of recovering possession of the Premises, expenses of reletting (but excluding necessary renovation and alteration of the Premises for use by a subsequent tenant or occupant), and the Base Rent and Annual Additional Rent as it becomes due hereunder; provided that Tenant shall be entitled to a credit against such amounts equal to (i) the amounts received by Landlord by re leasing the Premises or otherwise mitigating its damages or (ii) if Landlord fails to re-lease the Premises, the fair market rental value of the Premises for the applicable period. Notwithstanding anything in this Lease to the contrary, in no event shall Tenant be liable for (i) any consequential damages, or (ii) lost Base Rent in excess of two (2) years of Base Rent. If Landlord relets the Premises, then any rent or other concessions given to the new tenant shall be prorated evenly throughout the entire term of the new lease.

2

(b) Landlord may terminate Tenant's right to possession, in which case this Lease shall continue in effect whether or not Tenant shall have abandoned the Premises. In such event, Landlord shall be entitled to enforce all of Landlord's rights and remedies under this Lease including the right to recover the Base Rent and Annual Additional Rent as it becomes due hereunder. Landlord may enforce every provision of the Lease in accordance with its terms including, but not limited to enforcement of the payment of Base Rent and Annual Additional Rent provisions by a suit or suits in equity or at law, provided that in no event shall Landlord be allowed to require Tenant to perform any obligation of Tenant under this Lease that requires Tenant to be in possession of the Premises if Landlord has terminated such right to possession; provided further however that Tenant shall reimburse the reasonable and documented costs and expenses paid by Landlord in performing any such obligation, to Landlord on demand.

(c) Landlord may but shall not be obligated to perform any obligation of Tenant under this Lease, and if Landlord so elects, Tenant shall reimburse the reasonable and documented costs and expenses paid by Landlord in performing such obligation, to Landlord on demand.

(d) In addition, in the event of a default by Tenant, Landlord, at its option, without further notice or demand, shall have the right to any one or more of the following remedies in addition to all other rights and remedies provided at law or in equity or elsewhere herein: (w) to remedy such default or breach in which event Tenant shall reimburse Landlord for the actual cost and expense incurred by Landlord to remedy such default or breach (including attorneys' fees) within thirty (30) days after receipt of an invoice from Landlord; (x) to pursue the remedy of specific performance; and (y) to seek money damages for loss arising from Tenant's failure to discharge its obligations under this Lease. Notwithstanding the foregoing, in no event shall Landlord be entitled to (i) pursue any self-help eviction remedies, or (ii) pursue any claim for lost profit damages, whether direct or indirect.

Notwithstanding the foregoing, with respect to any remedy exercised by Landlord, Landlord shall have an affirmative obligation to make reasonable efforts to obtain another tenant for the Premises promptly, at a fair market rental, and to otherwise mitigate its damages. Notwithstanding any provision of this Lease, if Tenant shall in good faith exercise an offset right expressly provided in this lease and Landlord shall in good faith object thereto, Landlord shall not be entitled to terminate the Lease or terminate Tenant's rights to possession and use as provided in this Lease unless and until (a) a court of competent jurisdiction shall render a final judgment (including exhaustion of any appeals allowed under applicable law) that Tenant wrongfully exercised such offset right and (b) Tenant has failed to cure such wrongful offset within thirty (30) days of entry of such final judgment.

*Id.* at 44–45.

Paragraph 14.4 serves as a limitation on the *landlord's* liability:

14.4 LIMITATION OF LANDLORD LIABILITY. Notwithstanding any provisions in this Lease contrary: (i) there shall be absolutely no personal liability on the part of the members, managers, directors or officers of Landlord with respect to any of the terms, conditions and covenants of this Lease, but Tenant may levy upon Landlord's interest in the Property, including without limitation the rents, income, profits and proceeds of such interest; and (ii) Landlord shall not be liable for any consequential, punitive, or incidental damages, including without limitation, any claims for lost profits or business opportunity.

*Id.* at 45.

3

And finally, Paragraph 23.11 addresses "cumulative remedies":

> 23.11 CUMULATIVE REMEDIES. Except where otherwise expressly provided in this Lease, no remedy or election hereunder shall be deemed exclusive, but shall, wherever possible, be cumulative with all other remedies at law or in equity. Except as expressly provided in this Lease, neither Landlord nor Tenant shall have any liability for any consequential, punitive, or other special damages.

*Id.* at 51.

Because Starbucks "refuse[d] to take possession of the Premises, has never commenced tenant improvements, and has never opened for business at the Premises," Plaintiff sent Starbucks a Notice of Default and Demand to Cure on January 16, 2026. Compl., Dkt. 1-2 ¶¶ 52–69. When Starbucks did not cure the default by the response deadline provided in the lease, Plaintiff filed this breach of contract action. *Id.* Starbucks has moved to dismiss but, at least at this stage, does not contest whether it is in default under the lease. Dkt. 9. Rather, it contests the quantity of damages available to Plaintiff under the lease. *Id.*

## II.    LEGAL STANDARDS

To resolve Rule 12(b)(6) motions, the Court applies the familiar *Twombly*/*Iqbal* standard. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, the Court accepts Plaintiff's factual allegations as true and draws all reasonable inferences in its favor. *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012). So long as the complaint alleges "enough facts to state a claim to relief that is plausible on its face," the motion to dismiss must be denied. *Twombly*, 550 U.S. at 555. The Court can consider any materials—including contracts—that are attached to the complaint without converting the motion to dismiss into a motion for summary judgment. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011).

### III.    ANALYSIS

Virginia law governs this contractual dispute. *See Hamden v. Total Car Franchising Corp.*, 548 F. App'x 842, 845 (4th Cir. 2013) (citing *James v. Circuit City Stores, Inc.*, 370 F.3d 417, 421–22 (4th Cir. 2004)). Contract interpretation is a pure question of law for the Court to decide. *See Virginia is for Movers, LLC v. Apple Fed. Credit Union*, 720 F. Supp. 3d 427, 436 (E.D. Va. 2024) (citing *Bolton v. McKinney*, 299 Va. 550 (Va. 2021)).

In Virginia, the "words [used in a contract] are given their ordinary and customary meaning when they are susceptible to such a construction."  *Hill v. State Farm Mut. Auto. Ins.*, 237 Va. 148 (Va. 1989). Virginia law "presumes parties do not include meaningless contract provisions," *Hamden*, 548 F. App'x at 846 (citing *Ross v. Craw*, 231 Va. 206 (Va. 1986)), and relatedly, that the parties "have not used words needlessly." *Virginia is for Movers, LLC*, 720 F. Supp. 3d at 436 (citing *PMA Cap. Ins. Co. v. U.S. Airways, Inc.*, 271 Va. 352 (Va. 2006)).

When interpreting a contract, the "ultimate purpose is to give effect to the parties' mutual intent." *Allied Prop. & Cas. Ins. Co. v. Zenith Aviation, Inc.*, 336 F. Supp. 3d 607, 611 (E.D. Va. 2018) (citing *Seals v. Erie Ins. Exch.*, 277 Va. 558 (2009)). Courts should not "strain to find ambiguities or examine certain specific words or provisions in a vacuum, apart from the [contract] as a whole." *Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 636 (4th Cir. 2005) (quoting *Salzi v. Virginia Farm Bureau Mut. Ins. Co.*, 263 Va. 52 (Va. 2002)). Rather, all provisions should be "harmonized, giving effect to each when reasonably possible." *Schuiling v. Harris*, 286 Va. 187, 747 S.E.2d 833, 836 (2013).

A contractual provision is not ambiguous "merely because the parties disagree as to the provision's meaning." *Hamden*, 548 F. App'x at 846 (citing *TM Delmarva Power, L.L.C. v. NCP of Va., L.L.C.*, 263 Va. 116 (Va. 2002)).  A contract is only "ambiguous when it is subject to multiple

5

interpretations in view of the entire contractual context." *James River Ins. Co. v. Doswell Truck Stop, LLC*, 297 Va. 304, 306 (Va. 2019). Here, neither party asserts ambiguity at the motion to dismiss stage; rather, they offer diametrically opposed interpretations of the lease's language. Obviously one (or both) is wrong because either the lease is ambiguous, or the plain text supports *one* of the interpretations. But because Starbucks is the moving party, the Court need only consider whether its argument for dismissal is unambiguously supported by the lease's text.

Starbucks, rather than reading the contract as a whole, isolates the next-to-last sentence of Paragraph 14.2(a) and argues that provision limits its liability to two years of base rent. *See* Dkt. 9 at 2–3 ("Notwithstanding anything in this Lease to the contrary, in no event shall Tenant be liable for (i) any consequential damages, or (ii) lost Base Rent in excess of two (2) years of Base Rent.") (citing Ex. 1 to Compl., Dkt. 1-2 at 44–45). But Starbucks' reading ignores the text and structure of the lease and renders several provisions superfluous in plain violation of Virginia law.

The plain language of Paragraph 14.2 allows Plaintiff to choose between *at least* four remedial provisions upon Starbucks' default.[3] *See* Dkt. 1-2 at 44–45 ("In the event of any such default which remains uncured . . . Landlord *may* . . . pursue one of the following remedies."). Starbucks' singular focus on sub-paragraph 14.2(a) ignores Plaintiff's other potential remedies outlined in sub-paragraphs 14.2(b), (c), and (d). For example, sub-paragraph 14.2(d) provides that

---

[3]     The lease provides the Landlord *may* use one of the four remedies identified in Paragraph 14.2. "The word 'may' is primarily permissive," however, when "endeavoring to arrive at the meaning of written language, whether used in a will, a contract, or a statute, 'may' and 'shall' [will be construed] as permissive or mandatory in accordance with the subject matter and context." *Ross v. Craw*, 231 Va. 206, 212 (Va.1986); *see also TM Delmarva Power, L.L.C. v. NCP of Virginia, L.L.C.*, 263 Va. 116, 121 (Va. 2002); *Pettus v. Hendricks*, 113 Va. 326, 330 (Va. 1912). At this stage, the Court does not need to resolve whether the use of the word "may" limits the Landlord to the four remedies outlined in Paragraph 14.2 or suggests the Landlord has discretion to elect other remedies beyond those suggested in Paragraph 14.2. But the parties' use of the word "may" further strains Starbucks' very restrictive interpretation of the lease.

6

"Landlord, at its option, shall have the right to any one or more of the following remedies in addition to all other rights and remedies provided at law or in equity or elsewhere herein: [including] . . . *specific performance. . . .*" *Id.* at 45 (emphasis added). Starbucks' argument that sub-paragraph 14.2(a) unambiguously limits Plaintiff's damages to two years of base rent simply does not comport with sub-paragraph 14.2(d), which allows Plaintiff to seek specific performance (which, if awarded, would require Starbucks to pay rent up to the full 10-year term, among other fees and costs). To be sure, sub-paragraphs 14.2(b), (c), and (d) would not need to exist if Starbucks' reading of sub-paragraph 14.2(a) were correct. This Court, in accordance with the canons of interpretation adopted by Virginia courts, is disinclined to adopt an interpretation that reads multiple paragraphs out of the parties' contract.

Starbucks' argument further conflicts with Paragraph 23.11 of the lease that provides "except where otherwise expressly provided in this Lease, no remedy or election hereunder shall be deemed exclusive, but shall, wherever possible, be cumulative with all other remedies at law or in equity. *Id.* at 51. Paragraph 23.11 would be entirely superfluous if the second-to-last sentence in sub-paragraph 14.2(a) provided the *sole* remedy for Starbucks' default.[4]

Moreover, the Court is unconvinced by Starbucks' assertion that sub-paragraph 14.2(a) trumps all other language in the lease because it is prefaced by a "notwithstanding" clause. *E.g.*, Dkt. 14 at 2. Throughout the lease, the phrase "notwithstanding any provision in this Lease to the contrary" frequently appears. Given the popularity of this phrase in the lease, it would prove difficult to parse which notwithstanding phrase took precedent over others, and Starbucks offers no arguments why this specific use of the phrase should be prioritized. Because the Court does not

---

[4]      The parties also demonstrated that they know how to limit liability across the entire lease by including a limitation of Landlord liability clause in Paragraph 14.4.

agree with Starbucks' strained reading of this clause, the question moving forward will be whether the "notwithstanding" clause injects enough ambiguity into the contract to permit Starbucks to introduce parole evidence. *See United States Dep't of Lab. v. Serenity Home Health Care LLC*, 2023 WL 4549581, at \*7 (E.D. Va. July 14, 2023) (parole evidence can be considered if it helps resolve an actual ambiguity). That is a question for another day, though, because even if there was ambiguity in the lease, the Court cannot resolve that ambiguity at the motion to dismiss stage. *See Virginia is for Movers, LLC v. Apple Fed. Credit Union*, 720 F. Supp. 3d 427, 439, n.7 (E.D. Va. 2024) (collecting cases holding that ambiguities cannot be resolved at the motion to dismiss stage)

In sum, the Court need not offer a definitive construction of the lease to deny Starbucks' motion to dismiss. At this stage, it is enough to reject Starbucks' interpretation of sub-paragraph 14.2(a) as unambiguously excluding all other remedies. Because Starbucks' interpretation renders other provisions of the lease meaningless and is generally discordant with the text and structure of the lease, the Court must reject Starbucks' argument that the second-to-last sentence in sub-paragraph 14.2(a) unambiguously limits its liability to two years of base rent.

Accordingly, its motion to dismiss must be denied.

## IV.   CONCLUSION

For these reasons, Starbucks' motion to dismiss (or to strike) (Dkt. 8) is **DENIED**, and the hearing scheduled for July 8, 2026, at 2:00 p.m. is **CANCELLED**.

The Clerk is directed to provide a copy of this Memorandum Opinion & Order to all counsel of record.

Entered this  5th  day of June, 2026.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

8